## POWELL v. WOOD.

No. 7829.

Court of Civil Appeals of Texas. Austin.

April 19, 1933.

Rehearing Denied May 17, 1933.

Harris, Harris, & Sedberry, of San Angelo, for appellant.

Collins, Jackson, & Snodgrass, of San Angelo, for appellee.

McCLENDON, Chief Justice.

This is a boundary suit involving a strip of land 2½ feet wide off the south side of lot

6 in a certain block in San Angelo. Wood, the owner of lot 5, brought the suit against Mrs. Powell, the owner of lot 6, and recovered judgment upon a special issue verdict. Mrs. Powell has appealed.

Wood's title is predicated upon a verbal agreement between him and Mrs. Powell's grantor (McCrary) establishing the boundary.

Three propositions are urged by Mrs. Powell which question (1) the sufficiency of the evidence to support the judgment as regards a bona fide dispute over or lack of knowledge of the true location of the boundary line; (2) the sufficiency of the evidence to support the judgment in·fixing the claimed agreed boundary line; (3) the admissibility of certain testimony.

The following statement finds support in the evidence:

Lots 4, 5, and 6 face west, and lie in the order named from south to north. Each has a 50-foot frontage. In 1927 lots 4 and 6 were vacant and were owned by McCrary. On lot 5 (owned by Logan) was a brick veneered residence; with a concrete stoop on the north extending about 3 feet from the house from which a cement walk extended east and west to the front and rear of the house; the north line of the walk being flush with the north end of the stoop. There was also a cement sidewalk in front of lot 5, the north terminus of which was some 2 or 3 feet north of the north end of the stoop. This was the situation when Wood bought lot 5 from Logan in 1927. At the time he bought, there was a lot line stake approximately due west of the north end of the sidewalk marking the northwest corner of lot 5 and southwest corner of lot 6. This stake was pointed out to Wood as such corner stake, and he believed, and had no occasion for other belief, that this stake and the north end of the sidewalk marked the northern boundary of the lot he was purchasing. Early in 1928 McCrary erected a residence on lot 4, and before completing it began the erection of a residence on lot 6. Each of these residences was so placed as to be near the center of the lot, based upon locating the south line of lot 6 from the north end of the lot 5 sidewalk. About the time of completing the lot 4 residence, McCrary represented to Wood that he had had a survey made which placed the north line of lot 5 about 2½ feet south of the north end of the lot 5 sidewalk, and the south line of lot 5 at a point a few inches north of the north wall of the lot 4 residence, so that the eaves of that residence projected over onto lot 5. The north line of lot 5, under this location, cut several inches off the north stoop and walk of the Wood residence. Without making any investigation regarding the fact or accuracy of this survey, Wood entered into verbal agreement with McCrary, fixing the north line of lot 5 by projection from the north end of the lot 5 sidewalk and its south line at what

they believed to be 50 feet south of this north line. Under this agreement McCrary built a garage on lot 6, the south extremity of whose eaves approximately coincided with this line and projected a few inches south of the garage south wall; and a cement "ribbon" driveway from the street to the garage with a narrow cement curb to the south, flush, as to its south line, with the south side of the south wall of the garage.

McCrary also constructed a fence from the back of the garage to the east line of the lot. This fence was a projection of the south wall of the garage. Wood also built a garage and entrance driveway located similarly with reference to the agreed south line of lot 5. Wood sodded his front and north yards to this agreed line, and planted in roses the rear yard or garden up to this line. This was the situation when Mrs. Powell purchased from McCrary in 1928.

It is appellant's contention that this statement does not present a case of an agreed boundary where the true line is either in dispute or is uncertain or unknown to the parties at the time; but constitutes nothing more than a verbal exchange of two strips of land unenforceable under the statute of frauds.

■ The general principles which control the issue thus presented are not open to dispute. The authorities are collated in 7 Tex. Jur. p. 194 et seq. Many illustrations of the application of the rules might be cited, but we think this unnecessary. Generally speaking, when the line is in dispute, or its true location is unknown or uncertain, a verbally agreed boundary line will be upheld.

"Such agreements, when fairly made, are favored in law; they are approved and encouraged by the courts on the ground of convenience, policy, necessity and justice, and as being in the interest of peace and tranquillity." 7 Tex. Jur. pp. 195, 196.

It is requisite to the validity of such agreements, however, that there be dispute, uncertainty, or want of knowledge as to the location of the true boundary line. Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 23 Am. St. Rep. 340.

[2] We think, and so hold, that the above statement brings the case clearly within the general rule first above announced. Wood had no personal knowledge of the survey which McCrary claimed to have had made, nor as to its accuracy. He only knew what McCrary told him. The physical facts and the information he had up to that time indicated that his north line was a projection from the stake and north end of his sidewalk. He had no survey made when he purchased, and his actions as well as his words indicated a belief that this was the true north line of the lot he was buying. When McCrary informed him of his claimed survey, instead of going to the

trouble and expense of employing an attorney or a surveyor, or both, so as to ascertain the true facts and his legal rights, he made the agreement, which was without question fair and just—a neighborly agreement to the mutual advantage of each party concerned, yet more so to that of McCrary, since, under his own statement, the claimed survey would place his lot 4 residence only a few inches from his north line and cut off part of the eaves of his house; whereas only a few inches of Wood's stoop would be cut off. Manifestly every consideration of public policy demands that the agreement be upheld, unless it clearly falls within the rule announced in the Harn-Smith Case, which, in our opinion, it clearly does not.

The judgment fixes the agreed boundary at the south side of the lot 6 driveway curbing. It is true that Wood testified that the lot 6 garage, driveway, and curb were constructed with reference to the previously agreed boundary, and that the south curb line was placed at this agreed boundary. In detailing the terms of the agreement at the time it was made, however, he testified that he was to "go north 50 feet which would bring me to that stake," meaning the original lot line stake due west of the north end of the lot 5 sidewalk. This agreement fixed the line as projected from the north end of the lot 5 sidewalk; and this, we think, is the general effect of Wood's testimony, regardless of any apparent conflict in minor details. If the line were placed (as in the judgment) at the south side of the lot 6 driveway curbing, the eaves of the Powell garage would project onto McCrary's property. This garage was built after and with reference to the agreement, and (as testified to by Wood) in accordance with it. To place the line north of the north end of Wood's sidewalk would locate it several inches north of any claim ever made by Wood, and create an encroachment upon Wood's property in the erection of improvements, the location of which he knew and assented to. To this extent we think the trial court's judgment is erroneous.

█ Over objection that it was hearsay and prejudicial, Wood was permitted to testify that at the time he bought lot 5 the stake above adverted to was pointed out to him as the northwest corner of lot 5. We think it sufficiently appears from other parts of Wood's testimony that this pointing out was by the agent of his vendor. But, regardless of the source of the information, we think the evidence was admissible, along with the physical facts (the north end of the sidewalk, the location of the north stoop, and the stake, itself) to show Wood's bona fide claim and belief as to the line's location. It was not offered, nor would it have been admissible upon the theory of estoppel, since Wood's grantor was not a party to the suit. It was admissible, we think, as a basis for Wood's action in making the parol boundary agreement.

The trial court's judgment is reformed so as to fix the north line of lot 5 and south line of lot 6 by projection from the north end of the lot 5 sidewalk, and, as so reformed, that judgment is affirmed. Costs of appeal are taxed against appellee; other costs against appellant.

Reformed and affirmed.